**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DENNIS NELSON,

                              Plaintiff,

   v.                                         No. 10-CV-990
                                                    (GTS/DRH)

ELIZABETH WARREN, Nurse, Marcy Correctional
Facility,

                              Defendant.

---

**APPEARANCES:**                                 **OF COUNSEL:**

DENNIS NELSON
Plaintiff Pro Se
94-B-0694
Elmira Correctional Facility
Post Office Box 500
Elmira, New York 14902

HON. ERIC T. SCHNEIDERMAN            CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the                       Assistant Attorney General
   State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Dennis Nelson ("Nelson"), an inmate in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendant, a DOCCS nurse, violated his constitutional rights under the Eighth Amendment. Compl. (Dkt. No. 1). Presently pending are defendant's motions to dismiss pursuant to Fed. R. Civ. P. 12(b) and 28 U.S.C. § 1915 .

---

      [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Dkt. Nos. 16, 18.  Nelson opposes both motions.  Dkt. Nos. 17, 20.  For the reasons which follow, it is recommended that defendant's motion, Dkt. No. 16, be denied, and defendant's motion, Dkt. No. 18, be granted.

## I. Background

### A. Facts

The facts are related herein in the light most favorable to Nelson as the non-moving party.  See subsection II(A) infra.

Nelson contends that he is in danger due to his "serious physical injury[, specifically] . . . a[] non-healing leg ulcer d[ue] to a blood clot and deep vein thrombosis."  Compl. ¶ 6.  Nelson alleges that defendant Warren has harassed him, causing him pain and suffering.  Id. ¶ 7.  In an attachment to his complaint, Nelson further elaborates on his claims stating that (1) Warren is putting water in with the medication when they are in the cups prior to delivering them to the inmates; (2) Nelson took exception to Warren's decision about whether he should put pressure on his foot and leg; (3) Warren perspires excessively and sometimes wipes her nose with the back of her hand; (4) Warren takes out her problems at home on the inmates at work; and (5) Warren is generally disliked by Nelson because she is a "screw up."  Dkt. No. 1 at 7-8.  Nelson's motion to proceed in forma pauperis ("IFP") has been granted.  Dkt. No. 2.

Warren first filed a motion to dismiss, claiming that Nelson's assertions were meritless.  Dkt. No. 16.  Nelson opposed the motion in a one-page document which alleged that due to Warren's perspiration Nelson's leg has been infected and that due to Warren's subpar care, the infection is gangrenous.  Dkt. No. 17.  Defendant then filed a motion to conditionally

dismiss the complaint by revoking Nelson's IFP status. Dkt. No. 18. Nelson opposed that motion contending that he was in imminent danger of physical harm due to Warren's sweat continually dripping into his chronic leg ulcer and medication cup. Dkt. No. 20 at 2.

### B. Prior Lawsuits

It appears that Nelson has filed fifty-three other actions in the federal courts of New York since the commencement of his incarceration. See PACER Case Locator (visited Dec. 7, 2011), <http://pcl.uscourts.gov/view/?rid=OFvoXU6Nqw5Po1o7I5EmMY4JDiCEV9vT9q OYF1P8page=1=1>P.>. More than one of those actions have concerned the ongoing issues with Nelson's ulcerated leg. Prior to filing the present lawsuit, decisions in this district outlined Nelson's litigation history and revoked his IFP status. See Nelson v. Spitzer, No. 07-CV-1241, 2008 WL 268215, at *1 (N.D.N.Y. Jan. 29, 2008) ("A review of [Nelson's] prior proceedings reveals that [Nelson] does have three 'strikes' and, thus, should not be permitted to proceed with his action [IFP].") (citations omitted) (Dkt. No. 18-1 at 34-38); Nelson v. NeSmith, No. 06-CV-117, 2008 WL 3836387, at *5 (N.D.N.Y. Aug. 13, 2008) ("A detailed analysis of [Nelson's] prior litigation history, however, is unnecessary given prior findings by both the Western District of New York and this court, to the effect that while confined as a New York State prison inmate [Nelson] has filed at least three prior civil rights complaints dismissed for lack of merit.") (citations omitted) (Dkt. No. 18-1 at 22-27); Nelson v. Lee, No. 05-CV-1096, 2007 WL 4333776, at *5 (N.D.N.Y. Dec. 5, 2007) (concluding that, based upon a prior decision filed in the Western District of New York in 2004, Nelson has already acquired three strikes and that defendants need not independently establish that strikes previously occurred) (Dkt. No. 18-1 at 15-21).

Accordingly, the three strikes bar may be applicable.

## II.  Discussion

Nelson claims that his Eighth Amendment rights were violated when Warren was both contributing to infection in, and indifferent to treating, his ulcerated leg condition. Defendants contend that there is no merit to Nelson's claim and that, in the alternative, the claim should be conditionally dismissed because of the "three strikes" provision until Nelson can remit the appropriate filing fee.

### A. First Motion to Dismiss

#### 1. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the

4

misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir.2006); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191-92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)).

### 2. Failure to State a Claim

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition extends to the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who

5

actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  Chance, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate.  Chance, 143 F.3d at 703.  Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . .  are not adequate grounds for a section 1983 claim."  Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Defendant contends first that Nelson has failed to demonstrate an objectively serious medical need with his chronically ulcerated left leg. However, viewing the allegations in the complaint in the light most favorable to Nelson, Nelson's leg required constant care. Having a gaping and oozing wound that, for whatever reason, would not heal constitutes a condition which a reasonable physician and person would find required treatment. See Smith v. Carpenter, 316 F.3d 178, 186-87 (2d Cir. 2003) ("the failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment."); Odom v. Kerns, no. 99-CV-10668 (KMK) (MHD), 2008 WL 2463890, at *7-8 (S.D.N.Y. June 18, 2008) ("holding that cuts and open wounds could constitute serious medical need). Additionally, the need for repeated dressing changes may significantly affect daily life activities. Accordingly, viewing the facts in the light most favorable to Nelson, he has demonstrated a serious medical need.

Viewing the evidence in the light most favorable to Nelson, Nelson has sufficiently alleged an Eighth Amendment violation. Assuming the existence of the open leg wound, perspiration to the extent alleged by Nelson into the wound on a regular basis and the manner in which Warren allegedly ignored and denied treatment for Nelson's wound on a regular basis suffice to allege a claim. As in past cases, Nelson's claim concerning his leg cannot be resolved on this record without the fact-finding available on a more complete record afforded by a motion for summary judgment. Although it seems unlikely that, for example, Nelson will be able to proffer sufficient evidence that any action or inaction by Warren caused any exacerbation of Nelson's leg wound, Nelson is entitled to seek to obtain such proof given the allegations of his complaint.

Accordingly, defendant's motion on this ground should be denied.

### B. Second Motion to Dismiss

Defendant seeks dismissal of the complaint under 28 U.S.C. § 1915(g), which bars prisoners from proceeding IFP after three or more previous claims have been dismissed as frivolous, malicious, or for failing to state a claim. See 28 U.S.C. § 1915(g) (2006).[2] Frivolous claims "lack[] an arguable basis either in law or in fact." Tafari v. Hues, 473 F.3d 440, 442 (2d Cir. 2007) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). Malicious claims are filed with the intent to hurt or harm another. Id. (citations omitted). The failure to state a claim applies a parallel definition from Fed. R. Civ. P. 12(b)(6), but "it does not follow that a complaint which falls afoul of the [12(b)(6) motion to dismiss] standard will invariably fall afoul of the [§ 1915(g) standard]." Neitzke, 490 U.S. at 326; see also Tafari, 473 F.3d at 442 (citations omitted).

This "three-strikes" provision contains a narrow exception which permits suits, notwithstanding prior dismissals, when the prisoner is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); see also Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir. 2002) (applying imminent danger exception "[w]hen a threat or prison condition is real and proximate, and when the potential consequence is 'serious physical injury.'") In determining whether the imminent danger provision applies, the court must evaluate whether the claimed danger was still in existence when a complaint was filed and whether

---

[2] The three-strikes provision was adopted as part of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1995), which had as its principal purpose deterring frivolous prisoner litigation. Nicholas v. Tucker, 114 F.3d 17, 19 (2d Cir. 1997).

8

such danger was sufficiently serious in light of the liberal standards accorded to pro se plaintiffs to require protection. Chavis v. Chappius, 618 F.3d 162, 169-70 (2d Cir. 2010) (citations omitted). Thus, vague, conclusory, non-specific or implausible allegations of imminent danger are insufficient to circumvent the three-strikes bar. Id. at 170 (citations omitted). Additionally, dismissal is not precluded by the fact that Nelson has already been granted IFP status in this action. Dkt No. 7. When a court becomes aware of three prior strikes only after granting IFP status, it is appropriate to revoke that status and bar the complaint under § 1915(g). See McFadden v. Parpan, 16 F. Supp. 2d 246, 247 (E.D.N.Y. 1998).

As previously determined in this district, the three-strikes rule applies to Nelson's filings. Thus, it must be determined whether Nelson has sufficiently pled a condition which satisfies the imminent danger exception. Nelson's continued complaints of infection in his leg have previously been held insufficient to establish an imminent danger. See Nelson v. Scoggy, No. 06-CV-1146 (NAM/DRH), 2009 WL 5216955, at *2-4 (N.D.N.Y. Dec. 30, 2009) (dismissing the case since Nelson had received adequate medical care for his leg and the failure of the wound to heal was the result of Nelson's own acts of interference with the treatment provided and his self-mutilation); see also Cash v. Berstein[3], No. 09-CV-1922 (BSJ/HBP), 2010 WL 5185047, at *3 (S.D.N.Y. Oct. 26, 2010) aff'd, 2010 WL 5222126 (S.D.N.Y. Dec. 12, 2010) (Dkt. No. 18-1 at 6-11). Nelson alleges imminent danger in part because of the inadequate care resulting in a gangrenous condition. As continued

---

[3] "It appears that [Nelson] uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint . . . the . . . DIN[] assigned to [plaintiff] by . . . [DOCS] is 94-B-0694 . . . [which is [also] assigned to Dennis Nelson." Cash v. Berstein, No. 09-CV-1922 (BSJ/HBP), 2010 WL 5185047, at *3 n.3 (S.D.N.Y. Oct. 26, 2010)

9

complaints of infection and gangrene, in light of the prior dismissal in Nelson v. Scoggy, are insufficient to establish imminent danger, such contentions cannot presently be used to help Nelson escape the three-strikes provision.

Moreover, to the extent that Warren's perspiration caused continued infection, such claims are also insufficient to allege imminent danger.  "[U]nsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." Merriweather v. Reynolds, 586 F. Supp. 2d 548, 552 (D.S.C. 2008) (citations omitted); see also Hafed v. Federal Bureau of Prisons, 635 F.3d 1172, 1180 (10th Cir. 2011) (holding that, when claiming imminent danger based upon medical care, the plaintiff must "make a specific reference as to which of the defendants may have denied him what medication or treatment for what ailment on what occasion . . . .") (internal quotation marks and citations omitted); Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (A court may find that a complaint does not satisfy the 'imminent danger' exception if the complainant's 'claims of imminent danger are conclusory or ridiculous.'") (citations omitted); Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003) (holding that "general assertions [are] insufficient to invoke the [imminent danger] exception . . . absent specific fact[ual] allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing a likelihood of imminent physical injury.") (citations omitted).

Nelson has failed to allege any specific, factual evidence regarding the timing, cause, treatment, or prognosis of his new alleged infection.  Moreover, the causation which Nelson proffers to account for his infection and gangrene – Warren's perspiration --,is fanciful at best.  Accordingly, Nelson has failed to provide anything more than vague, conclusory generalizations.  There thus exists " no basis for evaluating the imminence or

10

dangerousness of the threat . . . Moreover, unless we require prisoners to demonstrate the actual existence of an imminent threat, otherwise disqualified filers could obtain IFP status simply by adding general allegations of endangerment." Mitchell v. Federal Bureau of Prisons, 587 F.3d 415, 421 (C.A.D.C. 2009).  As Nelson has failed to plead his case with the specificity required to trigger the three-strikes safety valve, the imminent danger exception does not apply.

Accordingly, defendant's second motion to dismiss conditionally based upon the three-strikes rule should be granted.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

1. Defendant's first motion to dismiss (Dkt. No. 16) be **DENIED**; and

2. Defendant's second motion to dismiss (Dkt. No. 18) be **GRANTED** and that:

   A. The order granting Nelson IFP Status (Dkt. No.7) be **VACATED**;

   B. The complaint be **DISMISSED** as to all claims unless Nelson pays the filing fee of $350.00 within thirty (30) days of the entry of a final order by the district court; and

   C. Nelson be **BARRED** from filing any IFP complaints in this district unless he is under imminent danger of serious physical injury.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d

85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: December 12, 2011
      Albany, New York

                                          *David R. Homer*
                                     United States Magistrate Judge